**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| Nancy West,<br><br>    Plaintiff,<br><br>v.<br><br>Verizon Communications, Inc.; Kevin Cammarata in his capacity as Chairman, Verizon Employee Benefits Committee or its designated successor; and Verizon Group Life Insurance Plan for New York and New England Associates,<br><br>    Defendants. | Civil Acton No. 1:17-CV-11222 |

## **PLAINTIFF'S COMPLAINT**

### **Introduction**

1. This is an action brought under the Employee Retirement Income Security Act of 1974 ("ERISA") by Nancy West, a beneficiary under the Verizon Group Life Insurance Plan for New York and New England Associates (hereafter the "Plan"), seeking to recover the $412,000 value of Employee Supplemental Life Insurance ("Supplemental Life Insurance") coverage under the Plan that should have been paid to Mrs. West after the death of her deceased husband, Kenneth J. West, a participant under the Plan.

2. Prior to his death, Mr. West had been receiving short-term and then long-term disability benefits from his employer, Verizon Communications, Inc. (hereafter "Verizon"). Mr. West was also receiving a disability pension from Verizon. Defendants have refused to pay the amount of Mr. West's Supplemental Life Insurance to Mrs. West on the ground that Mr. West's

Supplemental Life Insurance had lapsed because premium payments were not made by Mr. or Mrs. West while Mr. West was disabled and receiving these benefits.

3. Mr. and Mrs. West, however, believed that Verizon was deducting any required monthly premium amounts owed for his Supplemental Life Insurance coverage from his disability pension payments in the same manner as it deducted premiums for his medical and dental coverage during that time period. Mr. and Mrs. West were unaware that Mr. West's Supplemental Life Insurance premiums had actually not been paid in this manner and were never informed by the Defendants how they should instead make such payments. Neither Mr. West nor Mrs. West ever received any communication from Verizon concerning paying premiums for the Supplemental Life Insurance coverage, such as invoices requesting payment of the monthly premiums or notice that the Supplemental Life Insurance coverage was in jeopardy of lapsing due to non-payment.

4. At all times, however, the Defendants knew or should have known of Mr. West's severe medical condition and of his corresponding need to maintain his benefits, including his Supplemental Life Insurance. Further, given the circumstances known to them as to Mr. West's health, all Defendants knew or should have known at all relevant times that any failure to timely pay premiums could only have been due to their misstatements, their silence in the face of unpaid or overdue premiums, and their other acts, errors, and omissions, and they should have acted in response. Defendants did not do so, however, breaching fiduciary obligations owed by them under ERISA.

5. Under these circumstances, the Defendants are obligated to pay to Mrs. West the $412,000 value of Mr. West's Supplemental Life Insurance, as well as interest and attorneys fees.

## JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 because this action is brought under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA").

7. Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because each of the Defendants may be found in this District: Defendant Verizon has substantial business operations in this District, the Plan covers substantial numbers of individuals in this District, and Defendant Cammarata administers the benefits of numerous individuals in this District. Venue is also proper in this District because the breaches at issue occurred in this District.

8. Personal jurisdiction over the Defendants lies under 29 U.S.C. § 1132(e)(2), which provides that "process may be served in any other district where a defendant resides or may be found." Each of the Defendants may be found here given their actions in this state related to the Plan and to Verizon's business operations in this state.

## PLAINTIFF

9. Plaintiff Nancy West is a citizen of Massachusetts. Mrs. West at all relevant times has been and remains a beneficiary under the Plan.

## DEFENDANTS

10. Defendant Verizon is the sponsor of the Plan and a Named Fiduciary of the Plan. The Plan's terms expressly provide that Verizon is a Named Fiduciary of the Plan.

11. Defendant Cammarata is the Chairperson of the Verizon Employee Benefits Committee or any successor to that committee and as such, under the terms of the Plan, is a

Named Fiduciary of the Plan. The Plan's terms expressly provide that the chairperson of that committee is a Named Fiduciary under the Plan.

12. Defendant Plan is an employee benefit plan governed by ERISA.

## FACTS

13. Mr. West was employed by Verizon or other various corporate predecessors for more than twenty five years. As a Verizon employee and as a member of Local #2325 of the International Brotherhood of Electrical Workers, Mr. West was entitled to certain benefits, including health insurance, life insurance and optional Supplemental Life Insurance coverage under the Plan.

14. Mr. West elected the Supplemental Life Insurance coverage which provided approximately $412,000 additional life insurance coverage in the event of his death. Mrs. West was his designated beneficiary for this coverage. Prior to Mr. West's disability, payments for this benefit were automatically deducted from his compensation.

15. In 2010, Mr. West began to have a number of medical problems which resulted in a diagnosis of Amyotropic Lateral Sclerosis ("ALS"), a disease that is typically fatal within three to five years of onset and/or diagnosis. Mr. West continued to work at Verizon until July 2012 when he became physically unable to stand, and he was placed on temporary disability leave. At that time, Mr. West began to receive compensation via the short-term disability plan provided by Verizon. When it became apparent that Mr. West would never be physically able to return to work at Verizon, his status as a recipient of short-term disability benefits changed and he instead began receiving long-term disability benefits. Mr. West thereafter also received a disability pension from Verizon.

16. Mr. West believed that all of his benefits remained intact, including his Supplemental Life Insurance coverage during the time that he was receiving disability benefits and his disability pension.

17. For the first three years that Mr. West was disabled, Verizon, in accordance with its policy, did not charge Mr. West for the employee portion of his benefits, which Mr. West and Mrs. West understood to include medical, dental and Supplemental Life Insurance coverage. Neither Verizon nor the other Defendants ever indicated to either Mr. West or Mrs. West that the Supplemental Life Insurance premiums had to be paid separately.

18. Thereafter, any amounts due for Mr. West's benefits were always deducted from Mr. West's disability pension payments and Mr. West believed that any payments due from him for his coverage, including for Supplemental Life Insurance, were deducted from his disability payments. When Mr. West went on disability leave, Verizon explained that it would withhold the premiums owed for all of his benefit elections, including the Supplemental Life Insurance, from his disability pay. At no time did Verizon inform Mr. West or Mrs. West that Mr. West would need to separately remit premium payments for his Supplemental Life Insurance. Based on Verizon's representations, Mr. West and Mrs. West reasonably believed that the premium payments for all of his benefit elections, including the Supplemental Life Insurance coverage, were being timely paid.

19. Verizon did, in fact, deduct monthly premium payments for medical and dental coverages from Mr. West's disability pension while he was on disability leave. Verizon has represented that it did not withhold premium payments for Mr. West's Supplemental Life Insurance. Those payments should, however, have been withheld from his disability pay in the

same manner as the premiums for Mr. West's medical and dental coverage.  Verizon has not explained or documented why this discrepancy between types of benefits occurred.

20. Neither Verizon nor any of the other Defendants ever sent any invoices for the Supplemental Life Insurance coverage to Mr. West or Mrs. West.

21. Neither Mr. West nor Mrs. West ever received notices or invoices from the Plan or the other Defendants regarding the Supplemental Life Insurance coverage.

22. Verizon and the other Defendants knew or had reason to know of Mr. West's health conditions and disability, and of his corresponding need for continued benefits, including continuation of his Supplemental Life Insurance coverage.

23. Mr. West had previously explained to Verizon that his disability leave was due to the onset of ALS, a terminal disease that typically causes death within three to five years of onset and/or diagnosis.  Thus, Verizon and the other Defendants knew, or should have known, that the Supplemental Life Insurance coverage was of great importance to Mr. West to ensure that his family would be provided for following his death.

24. Verizon and the other Defendants knew, or under these circumstances had reason to know, that Plaintiff therefore would never have knowingly allowed the Supplemental Life Insurance or any other benefit to lapse or otherwise terminate.

25. Given Mr. West's terminal condition, had Verizon or the other Defendants properly notified the Wests of the required premium payments, any premiums would have been promptly paid in full.  None of the Defendants ever did so.  If, as the Defendants claim, Mr. West's Supplemental Life Insurance lapsed and terminated for non-payment, it was only because the Defendants failed to timely notify or advise the Plaintiff of the non-payment and of the proper method for payment.

26. Despite knowing that Mr. West was on disability leave due to the onset of ALS, which typically results in death between three to five years after onset, Verizon never made any attempts to contact Mr. West to confirm that it was his intention that the Supplemental Life Insurance lapse, or to instruct him how to avoid having the coverage lapse.

27. Verizon and the other Defendants knew or should have known that the premiums were only not paid, and the Supplemental Life Insurance allowed to lapse, because: (a) Defendants caused the Plaintiff to understand and believe that all premiums were waived for three years, thereafter paid by deductions and that there was no need for them to make separate payments of premiums; (b) Defendants failed to affirmatively advise Plaintiff otherwise; and (c) Defendants failed to remedy the confusion that they sowed in this regard.

28. Had the Defendants properly covered the premium payments for Mr. West's Supplemental Life Insurance during his first three years of disability, as was done with his other benefits, his coverage would not have lapsed and the Plan would have paid the $412,000 of benefits to Mrs. West.

29. Had the Defendants properly deducted premium payments for Mr. West's Supplemental Life Insurance from his disability checks, his coverage would not have lapsed and the Plan would have paid the $412,000 of benefits to Mrs. West.

30. Had the Defendants properly, accurately, and timely advised Mr. West and Mrs. West that premium payments were not covered by Verizon during the first three years of disability and/or were not being deducted from Mr. West's disability checks thereafter, as well as of the procedure for instead paying premiums himself, Mr. West's coverage would not have lapsed and the Plan would have paid the $412,000 of benefits to Mrs. West.

31. Had the Defendants properly, accurately and timely remedied the problems caused by their acts, errors and omissions in administering Mr. West's Supplemental Life Insurance benefit, Mr. West's coverage would not have lapsed and the Plan would have paid the $412,000 of benefits to Mrs. West.

32. The Plan itself does not expressly and unambiguously state the manner in which payments for continued Supplemental Life Insurance are to be made by or collected from a participant who is receiving disability payments. The Plan does not state whether they are to be collected from disability payments, as with other benefits, or to instead only be paid by separate premium submissions. The Plan is ambiguous with regard to these issues.

33. The Defendants have been unjustly enriched by their acts, errors and omissions discussed above, as they have been wrongly allowed to retain $412,000 in benefits that would otherwise be due to be paid to Mrs. West.

34. Plaintiff has previously complied with all claim requirements under the Plan, including prosecution of an administrative appeal, and Plaintiff has exhausted all administrative remedies under the Plan. Defendants have issued a final denial of Plaintiff's claim for these benefits, and Defendants have advised that Plaintiff now "ha[s] a right to bring a civil action under Section 502(a) of ERISA." As a matter of law, however, Plaintiff does not need to exhaust those administrative remedies as a prerequisite to bringing claims for breach of fiduciary duty and equitable relief under ERISA.

## Count I
### (Claim for Breach of Fiduciary Duty Under ERISA §§404, 409 and 502(a)(2) Against Defendants Verizon and Cammarata)

35. Plaintiff incorporates and re-alleges the foregoing paragraphs by reference as though fully set forth herein.

36. Plaintiff brings this Count I pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), which allows a beneficiary to bring claims for appropriate relief for violation of the fiduciary duties imposed by ERISA in ERISA §§ 404 and 409, 29 U.S.C. §§ 1104, 1109.

37. Pursuant to ERISA §409, 29 U.S.C. § 1109, "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable" to make good any such losses.

38. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), provides in pertinent part that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and:

    (a) for the exclusive purpose of: providing benefits to participants and beneficiaries; and defraying reasonable expenses of administering the plan;

    (b) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . [and]

    (c) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this [title I of ERISA] and title IV.

39. By their conduct alleged above, the Defendants have violated the fiduciary duties imposed on them as Named Fiduciaries of the Plan by ERISA § 404, 29 U.S.C. § 1104.

40.     Plaintiff has incurred losses of $412,000 as a result of those breaches, representing the dollar value of the Supplemental Life Insurance coverage that should have been paid to Mrs. West had it not lapsed due to the Defendants' fiduciary breaches.

41.     Plaintiff has further lost the investment gains, interest and other benefit Mrs. West would have received from timely payment to her of the benefit.

## Count II
### (Claim for Equitable Relief pursuant to 29 U.S.C. § 502(a)(3) Against All Defendants)

42.     Plaintiff incorporates and re-alleges the foregoing paragraphs by reference as though fully set forth herein.

43.     ERISA § 502(a)(2), 29 U.S.C. § 1132(2), provides that "A civil action may be brought . . . by a . . . beneficiary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

44.     Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(2), Defendants are estopped from denying payment to Mrs. West of $412,000 in Supplemental Life Insurance benefits and are subject to surcharge, requiring them to disgorge that amount to Mrs. West along with any profit or gain earned by the Defendants during their retention of that amount.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

a)  Order Defendants to pay the $412,000 value of the Supplemental Life Insurance, along with any corresponding interest, lost investment gains or other losses suffered by Mrs. West due to the delay in payment to her;

b) Order that Defendants are estopped from declining to pay the $412,000 value of the Supplemental Life Insurance to Plaintiff;

c) Impose a surcharge, or other form of appropriate equitable relief, on the Defendants requiring them to disgorge to Plaintiff both the $412,000 value of the Supplemental Life Insurance and any profits made by the retention of that amount;

d) Award attorney's fees, costs and expenses of this litigation, under ERISA; and

e) Award all such other relief as this Court deems appropriate.

The Plaintiff,
**Nancy West**
By her Attorneys,

**Date:** June 30, 2017

/s/ Stephen D. Rosenberg

Stephen D. Rosenberg, Esq. [BBO# 558415]
**The Wagner Law Group**
99 Summer Street, 13th Floor
Boston, MA  02110
Tel: (617) 357-5200
Fax: (617) 357-5250
Email: srosenberg@wagnerlawgroup.com

### Certificate of Service

I hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 30th day of June, 2017.

  /s/ Stephen D. Rosenberg
Stephen D. Rosenberg